**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**HONG WANG,**

                          **Plaintiff,**

          v.                                           1:18-CV-350
                                                               (FJS/DJS)

**PRECISION EXTRUSION, INC.;**
**PEXCO, LLC; ALL-WEST PLASTICS, INC.;**
**and SPECTRUM PLASTICS GROUP, INC.,**

                          **Defendants.**
_____

**APPEARANCES**                                   **OF COUNSEL**

**FITZGERALD MORRIS**               **ASISH NELLUVELY, ESQ.**
**BAKER FIRTH, P.C.**                  **JOHN D. ASPLAND, ESQ.**
16 Pearl Street
P.O. Box 2017
Glens Falls, New York 12801
Attorneys for Plaintiff

**NELSON MULLINS RILEY &**        **GREGORY M. O'NEIL, ESQ.**
**SCARBOROUGH LLP**
Atlantic Station
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
Attorneys for Defendants

**CARTER, CONBOY, CASE,**          **WILLIAM J. DECAIRE, ESQ.**
**BLACKMORE, MALONEY**
**& LAIRD, P.C.**
20 Corporate Woods Boulevard
Albany, New York 12211-2396
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Pending before the Court is Defendants' motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's complaint in its entirety for failure to state a claim and because all of her claims are subject to mandatory arbitration. *See* Dkt. No. 5; Dkt. No. 5-6. Plaintiff opposes the motion in part. *See* Dkt. Nos. 9, 30.

**II. BACKGROUND**

At the time she filed her complaint, on March 20, 2018, Plaintiff, a woman of Chinese origin, was 52 years old. As part of a merger between Defendant Precision Extrusion, Inc. ("PEI") and Defendant Pexco, Plaintiff executed an Employment Agreement that allowed her to continue employment at Defendant PEI as Vice President of Operations, Glens Falls. *See* Dkt. No. 5-2 ("Employment Agreement") at § 1.2. Plaintiff alleges that, "[f]ollowing the acquisition of PEI by Pexco, [Defendants'] Executives subjected [her] to numerous instances of unprofessional and disrespectful conduct, amounting to harassment and discrimination based on her age, gender, race, and national origin." *See* Dkt. No. 1 ("Complaint") at ¶ 22. Furthermore, she asserts that, [a]s the only non-white female executive over the age of 40, Pexco's inescapable 'boys' club' culture precluded [her] from actively participating in decision-making commensurate with her position in the company." *See id.* Specifically, Plaintiff contends that she "was subjected to a pattern of harassment and discrimination over the course of her employment between December 8, 2015 and February 20, 2017, by [Defendants] PEI [and] Pexco . . . and their executives . . ., excluded from meetings based on her age, gender, race, and national origin, and ultimately stripped of her

-2-

responsibilities in retaliation for filing a complaint alleging unlawful discrimination and harassment against [Defendants'] executives." *See id.* at ¶ 23. Furthermore, she claims that, after she complained about the conduct of Defendants' Executives, Defendants retaliated against her by stripping her of her responsibilities; and, despite her complaints, Defendants allowed their executives to create and foster a hostile work environment and permitted a pervasive culture of harassment to exist in the workplace. *See id.* at ¶ 24. Finally, Plaintiff alleges that, as a result of this conduct, she "endure[d] significant emotional distress, which manifested in dangerously elevated blood pressure, requiring her to take medical leave, and eventually caused her to resign from her employment with PEI on or about February 20, 2017." *See id.* at ¶ 25.

Based on these allegations, Plaintiff asserted fifteen causes of action, alleging discrimination, hostile work environment, and retaliation based on age, sex, race, and national origin under Title VII, the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 1981, and New York State Executive Law.

### III. DISCUSSION

**A.    Preliminary matter**

Plaintiff does not oppose Defendants' motion to dismiss all of her causes of action against Defendants All-West Plastics, Inc. and Spectrum Plastics Group, Inc., in effect conceding that neither of these Defendants is her employer. Furthermore, Plaintiff does not oppose Defendants' motion to dismiss her Fourth, Sixth, Eighth, Tenth, Twelfth, and Fourteenth Causes of Action, all of which are based on alleged violations of New York State Executive Law, commonly referred to as New York State Human Rights Law. With regard to these causes of action, Plaintiff, in effect,

concedes that this Court does not have jurisdiction because she chose to resolve these claims administratively. Therefore, the Court grants Defendants' motion to dismiss the above-named Defendants and causes of action.

As a result, the two remaining Defendants in this action are Precision Extrusion, Inc. and Pexco, LLC. The remaining causes of action are as follows:

>	(1) First Cause of Action – constructive discharge because of Plaintiff's age in violation of the ADEA;
>
>	(2) Second Cause of Action – retaliation for complaining about discrimination in violation of the ADEA;
>
>	(3) Third Cause of Action – hostile work environment based on Plaintiff's age in violation of the ADEA;
>
>	(4) Fifth Cause of Action – discrimination based on Plaintiff's gender in violation of Title VII and 42 U.S.C. § 1981;
>
>	(5) Seventh Cause of Action – discrimination based on Plaintiff's race in violation of Title VII and 42 U.S.C. § 1981;
>
>	(6) Ninth Cause of Action – hostile work environment based on Plaintiff's race and gender in violation of Title VII and 42 U.S.C. § 1981;
>
>	(7) Eleventh Cause of Action - retaliation for complaining about gender and race discrimination in violation of Title VII and 42 U.S.C. § 1981;
>
>	(8) Thirteenth Cause of Action – violation of the terms of Plaintiff's employment contract based on her race in violation of 42 U.S.C. § 1981a(c); and
>
>	(9) Fifteenth Cause of Action – discrimination and hostile work environment based on Plaintiff's national origin in violation of Title VII and 42 U.S.C. § 1981.

*See generally* Dkt. No. 1, Complaint.

**B.     Defendant's motion to dismiss Plaintiff's remaining claims**

Defendants assert that, pursuant to Section 17 of the Employment Agreement that Plaintiff signed, all of her claims are subject to mandatory arbitration. *See* Dkt. No. 5-6 at 29. Defendants further argue that, "considering that Plaintiff signed the Employment Agreement and agreed that 'any dispute or controversy' including a claim for employment discrimination, would be settled by binding arbitration, there is no doubt that the factual allegations of Plaintiff's Complaint are within the scope of her Employment Agreement's arbitration clause." *See id.* Furthermore, Defendants claim that, because "[t]he counts of [Plaintiff's] Complaint for violations of Title VII, the ADEA, [and] § 1981 fall within the express language of the arbitration clause, and Plaintiff's Complaint arises solely out of the employment relationship and the Employment Agreement referenced therein[,]" *see id.* at 30-31, the Court should dismiss those claims, *see id.* at 31 (citing *Smith v. Professional Security Bureau*, 225 F. Supp. 2d 395, 397 (S.D.N.Y. 2002)).

Plaintiff, on the other hand, argues that her employment discrimination claims are not subject to mandatory arbitration under the provisions of her Employment Agreement. *See* Dkt. No. 9-3 at 14. Specifically, Plaintiff asserts that,

> [a]lthough the net result of the insidious discrimination and harassment [she] suffered at the hands of Defendants' executives resulted in both the loss of her responsibilities as enumerated in the Employment Agreement and her constructive termination, the discriminatory conduct of Defendants' executives fall well beyond the scope of the terms of the Employment Agreement, the "interpretation, validity, construction, performance, breach, or termination" of said Agreement, or "the Executive's employment by the Company."

*See id.* at 15.

Furthermore, Plaintiff contends that "fundamentally, the arbitration clause envisions a breach of the terms of the Employment Agreement[, which] contains no provision that prohibits

-5-

discrimination based on age, gender, race, or national origin." *See id.*  Thus, Plaintiff argues that, "absent language specifically requiring arbitration of employment discrimination claims under the ADEA, Title VII, or § 1981 within the Agreement, Defendants' insistence that [she] is bound by the non-specific arbitration provision, is without any basis in fact or law." *See id.* at 15-16.  Finally, Plaintiff asserts that, even if her claims were arbitrable, "Defendants have waived their right to arbitration by virtue of their past conduct in accepting the jurisdiction of the New York State Division of Human Rights and the Warren County Supreme Court in litigating state claims similar to the federal claims at issue here."  *See* Dkt. No. 30 at 3.

The Federal Arbitration Act ("FAA") provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Nonetheless, "'the FAA does not require parties to arbitrate when they have not agreed to do so.'"  *Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 453 (S.D.N.Y. 2016) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).  "The 'principal purpose' of the FAA is 'to ensur[e] that private arbitration agreements are enforced according to their terms,' . . ., and an arbitration agreement is interpreted as any contract would be. . . ."  *Id.* (internal quotation and citation omitted).  Therefore, "the FAA reflects 'both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract.'"  *Id* at 453-54 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. at 339, 131 S. Ct. 1740).  Finally, "'[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid.'"  *Id.* at 454 (quotation and other citation omitted).

"The Second Circuit has provided district courts with a four-pronged analysis to follow in

determining whether a dispute is governed by an arbitration clause[.]" *Senisi v. John Wiley & Sons, Inc.*, No. 13CV3314-LTS-AJP, 2015 WL 256094, *2 (S.D.N.Y. Jan. 21, 2015). These four prongs require a court to determine the following: (1) "'whether the parties agreed to arbitrate'"; (2) "'the scope of that agreement'"; (3) "'if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable'"; and (4) if . . . some, but not all, of the claims in the case are arbitrable, . . . whether to stay the balance of the proceedings pending arbitration.'" *Id.* (quoting *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)). Furthermore, "under the FAA 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, dely, or a like defense to arbitrability.'" *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quotation omitted). "This principle is based upon the fact that the FAA is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Id.* (internal quotation and citation omitted). Finally, the Second Circuit has noted that, where a broad arbitration clause exists, there is a "'"presumption of arbitrability."'" *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002) (quotation omitted).

With regard to the first prong of the analysis, Plaintiff does not dispute that her Employment Agreement contains an arbitration clause, *i.e.*, Section 17 of that Agreement; nor does she challenge the validity of that clause. Therefore, the Court concludes that the parties have agreed to arbitrate.

With regard to the second prong of the analysis, the parties disagree about whether Plaintiff's claims of discrimination, hostile work environment and retaliation under Title VII, the ADA, and § 1981 are within the scope of Section 17 of her Employment Agreement. Section 17

provides as follows:

> 17. **<u>Arbitration.</u>**  Except for disputes or controversies arising out of Section 6, which may be resolved by litigation before a court of competent jurisdiction, **the Executive and the Company agree that to the extent permitted by law, any dispute or controversy arising out of, relating to, or in connection with this Agreement, or the interpretation, validity, construction, performance, breach or termination thereof, or the Executive's employment by the Company or any termination thereof, will be settled by arbitration** to be held at a location in Glens Falls, New York in accordance with the Federal Arbitration Act and the National Rules for the Resolution of Employment Disputes then in effect of the American Arbitration Association.  The arbitrator may grant injunctions or other relief in such dispute or controversy.  The decision of the arbitrator will be final, conclusive and binding on the parties to the arbitration.  Judgment may be entered on the arbitrator's decision in any court having jurisdiction.  The arbitrator shall have the authority to award the prevailing party, if any, as determined by the arbitrator, all of its costs and fees, including arbitrators' fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees and attorneys' fees.

*See* Dkt. No. 5-2 at Sec. 17 (emphasis added).

Section 17 is a broad arbitration clause, which carries with it a presumption of arbitrability. *See ACE Capital Re Overseas Ltd.*, 307 F.3d at 34.  Furthermore, Section 17 clearly provides that the parties agreed that, "to the extent permitted by law, **any** dispute or controversy **arising out of, relating to, or in connection with** . . . **[Plaintiff's] employment by [Defendants] or any termination thereof, will be settled by arbitration** . . . ."  *See* Dkt. No. 5-2 at Sec. 17 (emphasis added).

Plaintiff cannot seriously dispute that her claims arise out of her employment and the termination of that employment with Defendants.  None of her claims would be viable if that were not the case.  Nonetheless, she argues that, because Section 17 does not "specifically require[] arbitration of employment discrimination claims under the ADEA, Title VII, or § 1981," her claims

are not within the scope of that arbitration clause.  *See* Dkt No. 9-3 at 15.

To support this argument, Plaintiff relies primarily on the Second Circuit's decision in *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81 (2d Cir. 2016).  *Lawrence*, however, is distinguishable from this case because it involved a plaintiff who was a union member and the sole issue before the Second Circuit was "whether the **collective bargaining agreement** ("CBA") contain[ed] a 'clear and unmistakable' waiver of [the plaintiff's] right to pursue his statutory claims in federal court."  *Id.* at 82 (emphasis added).  Although the district court had held that it did and granted the defendants' motion to compel arbitration, the Second Circuit disagreed, vacated, and remanded for further proceedings.  *See id.*

The Second Circuit explained that, although "[c]laims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be made subject to arbitration[,]" *id.* at 83, "[**c**]**ollectively bargained agreements to arbitrate statutory discrimination claims** must be 'clear and unmistakable,'" *id.* at 82 (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80-81, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998)) (other citation omitted) (emphasis added).  The court reasoned that, "[i]n order for a mandatory arbitration provision **in a CBA** to encompass an employee's statutory discrimination claims, the inclusion of such claims must be unmistakable, so that the wording is not susceptible to a contrary reading."  *Id.* at 83 (citing *Wright*, 525 U.S. at 80-81, 119 S. Ct. 391) (emphasis added).[1]

---

[1] Plaintiff also relies on the court's decision in *Litaker v. Lehman Bros. Holdings, Inc.*, No. 97 CIV 1607(DC), 1999 WL 619638 (S.D.N.Y. Aug. 16, 1999), to support her claim. Plaintiff notes that the *Litaker* court held "that Plaintiff's claims under Title VII [we]re subject to binding arbitration where Plaintiff had entered into a pre-dispute mandatory arbitration agreement that specifically provided for the arbitration of 'any claims or actions under Title VII, the ADEA or any other state or local statute[.]'"  *See* Dkt. No. 9-3 at 15 (citing *Litaker*, . . . 1999

(continued...)

In contrast to the cases on which Plaintiff relied, *Ahling v. Lehman Bros, Inc.*, No. 94Civ.9027(CSH), 2000 WL 460443 (S.D.N.Y. Apr. 18, 2000), involved an arbitration clause very similar to the one at issue in this case.² In that case, the employee worked for the defendant as a secretary and receptionist from 1981 until her discharge in 1994. In 1998, she signed an employment application that superseded the one she had initially submitted when she was hired in 1981. The second application contained an arbitration clause that provided, in relevant part, as follows:

> "I hereby agree that any controversy arising out of or in connection with my compensation, employment or termination of employment shall be submitted to arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc., or the American Stock Exchange, Inc. and be resolved in accordance with the rules, then in effect of such entities."

---

¹(...continued)
WL 619638, at *1). Plaintiff, however, ignores the fact that the court rejected the plaintiff's argument that the arbitration agreement did not cover claims under § 1981 because the agreement only provided that it applied "'to any claims or actions under Title VII, the ADEA or any other state or local discrimination statute[.]'" *Litaker*, 1999 WL 619638, at *6 (quotation omitted). In doing so, the court explained that this sentence did "not purport to be an exclusive list of the claims covered." *Id.* Furthermore, the court found that the plaintiff had "taken [the sentence] out of context, as **the entire provision also includes language stating that 'any controversy arising out of or in connection with [plaintiff's] compensation, employment or termination of employment' [was] to be submitted to arbitration**." *Id.* (emphasis added). Thus, rather than supporting Plaintiff's position in this case, the court's decision in *Litaker* undermines Plaintiff's arguments.

² Although *Ahing* presents a different procedural posture than this case, that does not affect the relevance of the case to the issues involved. Specifically, in a prior opinion, the court had enforced the mandatory arbitration clause contained in the plaintiff's employment agreement and had ordered the parties to arbitrate the plaintiff's claims. The parties proceeded to arbitration, and the arbitration panel issued a decision in favor of the defendant. The plaintiff then moved in federal court to vacate the award, and the defendant cross-moved to confirm the award. In support of her motion to vacate the award, the plaintiff relied on many of the same arguments that she had made in opposition to the defendant's earlier motion to compel arbitration.

*Id.* at *1 (quotation omitted).

The court began its analysis by noting that, "under the FAA, 'courts must interpret written arbitration agreements with "a healthy regard for the federal policy favoring arbitration,"' resolving any doubts concerning the arbitrability of issues in favor of arbitration." *Id.* at *4 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-5 (1983)). The court also noted that, in its earlier decision granting the defendant's motion to compel arbitration, it had "evaluated the relevant factors going into an arbitrability analysis and concluded that the arbitration clause in [the plaintiff's] employment agreement rendered her claims subject to mandatory arbitration." *Id.* (citation omitted). The court explained that, in doing so, it had rejected the plaintiff's "argument that her Title VII claim was non-arbitrable because Congress intended to preclude the waiver of judicial remedies with respect to claims under Title VII." *Id.*

In moving to vacate the arbitrators' decision, the plaintiff argued that "the arbitration provision's lack of specific reference to statutory discrimination claims preclude[d] mandatory arbitration of her Title VII claims." *Id.* at *5. The court disagreed. The court noted that the plaintiff had relied on two cases to support her argument – *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70 (1998), and *Crespo v. 160 West End Avenue Owners Corp.*, 253 A.D. 2d 28, 687 N.Y.S.2d 79 (A.D. 1st Dep't 1999). The court explained that both of those cases "involved union-negotiated collective bargaining agreements containing general arbitration clauses that did not specifically embrace statutory discrimination claims . . . [and that] [t]he Supreme Court in *Wright* and the New York Appellate Division in *Crespo* held that such union-negotiated arbitration provisions do not automatically waive an employee's right to bring statutory discrimination claims in a judicial forum." *Id.* Rather, the court stated that, "[i]n the context of collective bargaining

-11-

agreements, the courts found that waiver of the employee's statutory right to a judicial forum for discrimination claims must be 'clear' and 'unequivocal' in order to be enforceable." *Id.* (citation omitted).

In addition, the court found that the plaintiff had "misapprehend[ed] the holdings of those cases." *Id.* The court explained that neither of those cases had "held that all arbitration agreements must contain specific reference to statutory discrimination claims in order to be enforceable as to such lawsuits." *Id.* Rather, "the cases focused exclusively on union-negotiated collective bargaining agreements, which were specifically distinguished from individually executed arbitration agreements such as the one in the case at bar." *Id.* (citations omitted). The court further explained that, "[s]ignificantly, in *Wright*, the Court recognized that '*Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees – and hence the "clear and unmistakable" standard was not applicable'" *Id.* (quoting 525 U.S. at 80-81). Thus, the court concluded that, "because [the plaintiff] personally executed the agreement containing the arbitration clause, *Wright* and *Crespo* do not control, and thus the only basis for plaintiff's argument that she did not waive her right to bring her Title VII claim in a judicial forum evaporates." *Id.*

As noted, Section 17 is a broad arbitration clause, which carries a presumption of arbitrability; and the Court finds that Plaintiff has not overcome that presumption. The cases she cites to support her arguments are either distinguishable or do not support her position. Moreover, the clear language of Section 17 to which the parties agreed provides that, "to the extent permitted by law, **any** dispute or controversy arising out of, relating to, or in connection with the [Plaintiff's] employment by [the Defendants] or any termination thereof, will be settled by arbitration." *See*

-12-

Dkt. No. 5-2 at Sec. 17 (emphasis added). Moreover, based on the factual allegations in Plaintiff's complaint, it is clear that all of her claims of discrimination, harassment and retaliation arise out of, relate to or are in connection with her employment or the termination of her employment with Defendants. For all these reason, the Court concludes that Plaintiff's claims are within the scope of Section 17.

With regard to the third prong of the analysis, Plaintiff does not argue that Congress intended claims under Title VII, the ADEA and § 1981 to be nonarbitrable. Moreover, it would be futile for her to do so. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (finding that ADEA claims are arbitrable); *Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir. 2016) (noting that "[c]laims under Section 1981, Title VII, the NYSHRL, the FLSA, and NYLL may be made subject to arbitration); *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231 (2d Cir. 2006) (finding that § 1981 claims are arbitrable); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198 (2d Cir. 1999) (finding Title VII claims are arbitrable). Therefore, the Court concludes that Congress did not intend Plaintiff's Title VII, ADEA and § 1981 claims to be nonarbitrable.

In sum, for all of the above-stated reasons, the Court finds that the first three prongs of the arbitrability analysis demonstrate that all of Plaintiff's claims are arbitrable.

Nonetheless, the Court must consider Plaintiff's final argument that, even if her claims are arbitrable, Defendants have waived their right to arbitration because they did not raise this argument in response to either the complaint that she filed with the New York State Division of Human Rights or the Article 78 proceeding she filed in New York State Supreme Court, in which she appealed the Division of Human Rights' decision. *See* Dkt. No. 9-3 at 16; Dkt. No. 30 at 3-4.

"The determination of whether a party has waived its right to arbitration requires

consideration of three factors: '(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice.'" *O'Meara v. IntePros Inc.*, No. 3:16CV01840 (HBF), 2017 WL 3140359, *5 (D. Conn. July 19, 2017) (quoting *Sutherland v. Ernst & Young, LLP*, 600 Fed. Appx. 6, 7-8 (2d Cir. 2015) (quoting *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith*, 636 F.3d 156, 160 (2d Cir. 2010))). The Second Circuit "recognize[s] two types of prejudice: 'substantive prejudice and prejudice due to excessive cost and time delay.'" *Id.* (quoting *Sutherland*, 600 Fed. Appx. at 8 (citing *Thyssen*, 310 F.3d at 105)).

In *O'Meara*, the defendant argued that it had not waived its right to arbitration because it "'could not have invoked the arbitration provision while the case was pending before the CHRO [Connecticut Commission on Human Rights and Opportunities].'" *Id.* at *6 (citing Doc. #20 at 7 (citing *Ferguson v. United Health Care*, No. 3:08CV1389(MRK), 2008 WL 5246145 (D. Conn. 2008))]). The court agreed, explaining that "[t]he EEOC and CHRO are not bound by arbitration agreements." *Id.* (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 16 (1st Cir. 2005) ("[A]n employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings. The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate.")) (other citation omitted).

As in *O'Meara*, the Court finds that Defendants did not waive their right to arbitration when they failed to raise the arbitrability defense with the New York State Division of Human Rights or in the Article 78 proceeding in New York State Supreme Court, which was a continuation of that

-14-

proceeding.

Nor have Defendants delayed in raising the arbitration defense in this action. Plaintiff filed her complaint on March 20, 2018, and Defendants filed their motion to dismiss, in which they raised the arbitrability defense, on April 13, 2018, less than one-month after Plaintiff commenced this action. Moreover, there has been no other motion practice or any discovery in this action. Finally, the Court finds that Plaintiff will not suffer any prejudice as a result of Defendants' raising this issue so early in this litigation. *See O'Meara*, 2017 WL 3140359, at *6 (stating that "[p]rejudice is defined as 'inherent unfairness – in terms of delay, expense, or damage to a party's legal position – that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue'" (quoting *Doctor's Assoc., Inc. v. Distajo*, 107 F.3d 126, 134 (2d Cir. 1997)) (other citation omitted).

Having found that all of Plaintiff's claims are arbitrable and that Defendants have not waived their right to arbitrate, the Court must now consider whether to grant Defendants' motion to dismiss the complaint or deny that motion in favor of to staying these proceedings pending arbitration. Although until fairly recently the majority of courts had concluded that this decision was within the court's discretion, the legal landscape has now charged. In *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015), the court held, as a matter of first impression, "that the text structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Id.* at 347. The court reasoned that "[a] stay enables parties to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation, and generally precludes judicial interference until there is a final award." *Id.* at 346 (footnote omitted). At oral argument, the Court asked Plaintiff's counsel whether, if the Court

were to find that Plaintiff's claims were arbitrable, she would request that the Court stay the proceedings. Counsel responded, "Yes, she would." Therefore, the Court will stay these proceedings pending the completion of the arbitration.

## IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's complaint is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendants All-West Plastics, Inc. and Spectrum Plastics Group, Inc. are **DISMISSED** from this case; and the Court further

**ORDERS** that Plaintiff's Fourth, Sixth, Eighth, Tenth, Twelfth, and Fourteenth Causes of Action, all of which are based on alleged violations of New York State Executive Law, are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's First, Second, Third, Fifth, Seventh, Ninth, Eleventh, Thirteenth, and Fifteenth Causes of Action **are subject to mandatory arbitration pursuant to Section 17 of Plaintiff's Employment Agreement; and, therefore, if Plaintiff wishes to proceed with these claims against Defendants, she must do so through the arbitration procedures set forth in Section 17 of her Employment Agreement**; and the Court further

**ORDERS** that Plaintiff's counsel shall file a status report **every thirty (30) days from the date of this Memorandum-Decision and Order**, advising the Court of the progress of the arbitration process until such time as the arbitration proceedings have concluded; and the Court

further

**ORDERS** that the proceedings in this case are **STAYED** pending the completion of arbitration.

**IT IS SO ORDERED.**

Dated: June 26, 2018
       Syracuse, New York

                              Frederick J. Scullin, Jr.
                              Senior United States District Judge